## SIMPSON & AL. *vs.* SEAVEY & ALS.

If one of two tenants in common of a mill use it to the nuisance of a stranger; the other owner, not actually participating in the wrong, is not liable.

Thus where four owned a saw-mill, in the body of which three of them erected a lath-mill for their separate use, the rubbish thrown from which obstructed the mills below, it was held, in an action of the case against all the owners of the saw-mill for this injury, that the fourth owner, having no interest in the lath-mill, was not liable.

If two persons own separate saws in the same mill, under each of which they severally erect separate lath-mills, for their several use, the rubbish thrown from which becomes a nuisance to the mills below;—whether they can be jointly sued for this nuisance, *dubitatur*.

But if they be sued jointly, and one die before plea pleaded, it seems the action may be pursued against the survivor, for his separate acts.

If, in an ancient mill, a new and different machine is erected, of another description, the operation of which is a nuisance to the mills below; the antiquity of the mill itself affords no protection to the new machine erected within it, but the latter is to be regarded as an original and independent mill.

In order to constitute a mill a nuisance, as erected upon tide waters, it should appear to stand within the flow of common and ordinary tides.

In an action of the case for diverting water from the plaintiff's mill, it is no defence that the mill stands within the limits of tide waters, and is therefore a public nuisance.

In an action of the case for obstructing a water course, full costs are taxable, upon a sound construction of *Stat.* 1821, *ch.* 59, *sec.* 30, though less than twenty dollars are recovered.

THIS was an action of the case, in which the plaintiffs alleged that they were owners of a saw-mill on the *East Machias* river, below a saw-mill of the defendants; and that the latter, having erected two lath-mills within their own saw-mill, threw their lath-edgings into the river, which being carried by the current into the plaintiff's flume, choked and obstructed his gate-way, and diverted the water from his mill, &c.

The defendants, in addition to their several pleas of the general issue, pleaded in bar that the flume, dam and water works of the plaintiff's, mentioned in their writ, stand partly on the tide waters of

the river, and across the same, both above and below low water mark, where the tide regularly ebbs and flows ; and the residue thereof without the natural bed and banks of the river, upon a channel artificially created, and into which the waters of the river have unlawfully been caused to run by the plaintiffs. To which the plaintiffs replied that no part of their flume and water works was below low water mark. The cause was then submitted to the decision of the Court upon facts and damages to be found by commissioners agreed upon for that purpose ; who reported the following.

The defendants, during the time alleged in the writ, were owners of the double saw-mill called the Unity, situated on *East Machias river*, above the mill of the plaintiffs, and standing on an ancient mill site which had been used for that purpose upwards of sixty years. In the year 1826, two lath-mills were, for the first time, made and put in operation within the frame of the Unity mill ; one of which was owned, built and exclusively occupied by *Pope, Talbot* and *Seavey*, three of the defendants ; and the other by *Hovey*, another of the defendants, who died in 1827, pending the suit. *Dickenson*, the other defendant, owned and occupied, in his turn, two thirds of one sixteenth of the board saw, under which *Pope, Talbot* and *Seavey* erected their lath-mill ; but in the profits of the latter he had no interest, nor did he interfere in its management. The quantity of lath-edgings thrown into the river from the two machines was nearly equal. Prior to the erection of the plaintiffs' mill, which was built in the year 1808, the highest tides flowed up the river about six rods above the site of the plaintiffs' dam, now standing across the bed of the river ; but common tides do not now flow up so far as the dam, by four or five rods. The water is conducted to the plaintiffs' mill by a canal formed by a side dam, extending downwards, on the stream side, from the main dam to the flume ; and by a dyke on the shore side ; about eight rods of which canal were formed by cutting through or along the bank of the river.

They assessed the plaintiffs' damages, occasioned by both lath-mills, at sixteen dollars and sixty six cents.

*Allen* and *R. K. Porter*, for the plaintiffs, maintained their general right to damages on the ground of prior occupancy of the river, so far as related to the lath-mills ; contending that these could not be treated as part of the defendants' ancient saw-mill ; but were, to all practical effects, a new and different erection, subsequent to the building of the plaintiffs' mill ; the obstruction of which was therefore illegal. *Hatch v. Dwight,* 17 *Mass.* 289 ; *Merritt v. Brinkerhoff,* 17 *Johns.* 306.

They claimed the right to charge the defendant *Dickenson,* because owning and improving a turn in the saw-mill under which one of the lath-mills was situated, it was in his power to have prevented the mischief, at least during his term ; and by voluntarily permitting, he adopted the injury as his own. *Bush v. Steinman,* 1 *Bos. & Pul.* 404.

They further argued that the tide waters formed no bar to the action ; because none but the highest tides ever flowed above the dam ; and the rights of the public were limited to the flow of ordinary tides only. But if otherwise, the objection was not open in this form to the defendants, they not being specially injured. The remedy is for the public alone ; and by indictment or information.

If *Dickenson* is not liable, yet the action, being in tort, is good against the others. *Govett v. Radnidge,* 3 *East.* 62 ; 2 *Chitty's Pl.* 271, 281 ; 2 *Dane's Abr.* 485, sec. 15 ; *Kennebec Proprs. v. Boulton,* 4 *Mass.* 420. And the plaintiffs are entitled to full costs, in a case of this sort, however small may be the amount of damages. *Crocker v. Black,* 16 *Mass.* 448 ; *Bean v. Mayo,* 5 *Greenl.* 94 ; *Hathorne v. Cate, ib.* 74.

*Greenleaf* and *Dickenson,* for the defendants. The defendants being tenants in common of the whole saw-mill, are equally entitled to use the building and privilege, for every lawful purpose. No one can prevent or impede another. So long, therefore, as *Dickenson* had the undisturbed use of his turn in the saw mill, and sought nothing more, the use of other parts of the building, by other owners, and for other purposes, was nothing to him. They were neither subject to his orders, nor liable to his control, nor at work for his

Simpson & al. *v.* Scavey & als.

benefit, nor about his business.  And upon one or another of these facts turns the whole doctrine of one's liability for the acts of another as his servant or agent.  *2 Dane's Abr.* 493, 498, *sec.* 8, 9, 10. In the case of *Bush v. Steinman,* the wrong doers were actually in the employ and about the business of the defendant.  Yet the authority of the case itself has been doubted.  *Hammond on parties,* 66, 92.

But the action itself cannot be supported, because it seeks to charge jointly the owners of separate mills, for distinct offences. The injury complained of results from the lath-mills alone ; which are the several property of some only, of the defendants.  If they are jointly chargeable in this action, they would so be if one of the mills were of a different kind, standing in another place on the same river, and the disparity were ever so great in the amount of damages they occasioned.  The joint liability contended for does not depend on the accidental equality in the amount of damages occasioned by the two mills.  The rule of joint liability, in actions *ex delicto,* is founded either in joint agreement in the concoction of the offence, or in joint participation in its advantages.  *Hammond on parties,* 85.

If, however, the defendants are properly joined, yet the law is with them, upon the facts found.  Theirs is an ancient mill ; while the plaintiffs' is one of recent erection.  The *gravamen* here arises merely from a more extended operation of the defendants' mill, the character of which is not changed, as it now only works up a greater proportion of the timber than before.  For it is of common notoriety that lath-mills, like these, are supplied with nothing but the slabs and waste timber of the saw-mill.  This mode of increasing their business was as lawful as the erection of additional saws, and quadrupling the quantity of boards made, and of course the quantity of rubbish necessarily escaping from the mill into the stream below, equally to the annoyance of the plaintiffs.  But if the complaint arose from an entire change in the use of the mill, it would make no difference, since that would not change an ancient into a modern mill, nor abridge the rights of the owner.  *Luttrel's case,* 4 *Co.* 84, 89 ; 3 *Dane's Abr.* 5, *sec.* 11.  The owner of the mill below has

no remedy against the owner of the mill above, for any damage he may have sustained in consequence of any reasonable use of the water by the latter, for his own benefit, if it be not diverted. Every participator in the advantage of the stream, takes it *cum onere.* He takes the flood with the annoyances of its drift wood, as well as the benefit of its deposit. And the defendants insist that to avail themselves of the water for the purpose of floating away the useless rubbish of the work done in their mill, is not an unreasonable use of it ; but on the contrary has had the sanction of universal custom, since the first settlement of the country. The right to such use is recognized in *Palmer v. Mulligan*, 3 *Caines*, 307.

Yet if they have not this right, the plaintiffs may not complain ; because their own mill was erected on tide-waters, and so was wrongfully there. 2 *Dane's Abr.* 695, *art.* 4, *sec.* 1. So that the question will be, how much damage the nuisance of the defendants has done to the nuisance of the plaintiffs ; a question which it is supposed no court will feel itself bound to determine. 3 *Caines,* 312. For the controversy here is not upon the right of the defendants to abate the nuisance ; but it is whether the plaintiffs are in a situation to sue, by having suffered an injury in their *private rights.*

In any event, the plaintiffs can have but quarter costs. For the *Stat.* 1821, *ch.* 59, *sec.* 30, is different in this respect from all former laws. It has made no provision for cases where the title to real estate may be concerned, as the old law did ; but its language is peremptory, extending to every personal action, at least, in which less than twenty dollars is recovered But if it is to receive a construction as broad as the language of the former law, still the present is not a case for full costs. The case of *Crocker v. Black,* cited on the other side, was an action for obstructing a private way, in which the title to real estate was actually pleaded. But in an action like the present the title to real estate no more comes in question than it does where an assault and battery is justified in defence of one's freehold ; in which case the costs are never held to be affected by the nature of the defence.

The cause having been thus argued in writing, in vacation, the opinion of the Court was delivered at this term, by

Simpson & al. *v.* Seavey & als.

MELLEN C. J. Since the commencement of the action, *Hovey*, one of the defendants, has deceased ; as to him, therefore, the writ is abated. Whether his death has any effect upon the action in respect to the other defendants, will be noticed presently. By inspection of the writ it appears that whatever injury the plaintiffs have sustained, has been occasioned by the two lath-mills, which have been made within the frame of the saw-mill *Unity,* and by the throwing of lath-edgings from them into the river, which floated down and obstructed the plaintiffs' saw-mill. By the reported statement of facts it appears that *Dickenson* was a part owner of the saw-mill *Unity,* during the time mentioned in the will ; yet there is no proof that he owned any part of either of the lath-mills above mentioned ; but it does appear that, during the said period, *Dickenson* occupied no part of said lath-mills ; but one was wholly owned and occupied and improved by *Pope, Talbot* and *Seavey,* three of the defendants ; and the other was built and owned by the deceased *Hovey.* On these facts, we see no privity, in respect to the lath-mill, between *Dickenson* and the other three surviving defendants, which can implicate him in the transactions complained of by the plaintiffs, and subject him to damages ; of course he is considered by the court as not guilty, and judgment is to be entered in his favor for his legal costs.

It is contended on the part of the defendants that the present action is not maintainable ; because it was brought jointly against all the defendants, and that it appears, as before mentioned, that one lath-mill was owned in severalty by *Hovey ;* and the other in common by *Pope, Talbot* and *Sevey ;* and that it follows that the lath-edgings were not owned jointly or in common by all the defendants ; nor was the act of throwing them from the respective lath-mills into the river a joint act of *Pope, Talbot, Seavey* and *Hovey.* It is denied by the defendants' counsel that several trespassers, or persons who severally do an injury to a man's property directly or indirectly, can be sued jointly. The case of *Proprietors of Kennebec Purchase v. Boulton* is said by the plaintiff's counsel to be in point. That was an action of trespass *quare clausum fregit* against several persons who severally pleaded not guilty. They all were

on the plaintiff's, close at the same time ; but they cut down trees in different places ; one defendant worked alone ; several others worked together. The cause was tried before *Parsons  C. J.* but no objection was made because the trespassers were not proved jointly guilty, as alleged ; the only question on which any doubt seemed to arise was as to the mode of assessing damages. They were assessed severally according to the amount of each trespass, and the whole court approved of the instruction.   That case is not exactly like this, and it may not be a safe guide on this occasion.   In 1 *Chitty's Pl.* 74, it is laid down that " if several persons be made defendants jointly, where the tort could not in point of law be joint, they may demur ; and if a verdict be taken against all, the judgment may be arrested or reversed on a writ of error ; but the objection may be aided by the plaintiff's taking a verdict against one only ; or if several damages be assessed against each, by entering a *nolle prosequi* as to one after verdict and before judgment." He cites 2 *Saund.* 117, *b. n.* 2, and cases there found ; one of which is this : " In an action against husband and wife for that they spoke of the plaintiff certain scandalous words, the jury found the husband guilty and the wife not guilty ; and the plaintiff had judgment ; for though the action ought not to have been brought against both, yet the verdict hath cured this error."   We see no sound reason why the death of *Hovey* should not have the same  effect on the action, as though he had been living and found not guilty, inasmuch as there can be no judgment against him ; and on this principle it has become unnecessary to  pursue the enquiry as to the correctness of the manner in which the action was commenced.

The plaintiffs' mill is more ancient than the defendants' lath-mill ; though as to all the  purposes of a saw-mill the defendants have the prior title to the extent, and on the principles recognized in the case of *Hatch v. Dwight & al.* cited by plaintiffs' counsel.   But the lath-mill is a distinct concern ; and the damages sustained  by the plaintiffs are of a kind which the saw-mill could not occasion ; and there is no proof or pretence that such  damage existed before the  lath-mill was put into operation.

It is said that the plaintiffs' mill is a nuisance, because it is maintained by a dam extending across the river where it is navigable in the strict legal sense of the term ; that is, where the tide ebbs and flows. This objection does not appear to be fairly sustained by the report ; it is there stated that before the dam was built the highest tides used to flow about six rods above where the dam now stands, but that common tides do not flow up within four or five rods of the dam. The report gives no particulars as to the size of the river, but from an inspection of the plan which accompanies it, we must suppose it a small stream, inasmuch as the plans of two saw-mills, one on each side of the river, occupy very nearly one half the width of it ; besides the existence of mills and dams, is itself proof of rocks and falls there. As ordinary tides do not flow within several rods of the dam, we think that because the highest used to rise so as to flow back above where the dam now stands, that such a circumstance cannot alter the principle. A small stream is suddenly raised by a heavy rain ; and may also, from the nature of its banks, be filled by the tide to an unusual height, in consequence of a storm, or severe gales from the sea. But if the plaintiff's dam, is a public nuisance for the reason above stated, does it follow that this action cannot be maintained? In the case of *Palmer v. Mulligan*, cited by defendant's counsel, *Spencer J.* says that it is questionable whether the plaintiff can maintain his action if his own dam is a nuisance, but *Thompson J.* says "how far the allegation" (that the plaintiff's dam is a nuisance) "is founded in fact, is not now a subject of enquiry ; this is a question between the public and the plaintiff, and cannot be tried in this collateral way" : and *Kent C. J.* says, " To obstruct this and other public uses of the river, by dams &c. would be a nuisance ; but of this question we have nothing to do in the present case." We do not think this objection is sustained by the facts, and doubt whether if it was, it would be good in point of law.

The last question relates to costs, and, as the damages reported are under $20, the defendant's counsel contends that costs, equal to one quarter part of the damages, should be taxed, and no more, and he relies on the 30th section of *Stat.* 1821, *ch.* 59, *sec.* 30.

19

But the generality of the words "any action" must be restrained; otherwise they would include an action of *trespass quare clausum*, actions of covenant broken, &c. which we have decided do not fall within the fair and consistent construction of them. So where the plaintiff's damages are reduced below $20 by means of defendant's offset :—all these points have been settled as appears by the cases cited in the argument. In addition, it may be observed, that the plaintiffs have disclosed their title in their writ, and the question as to priority of rights is expressly presented by the report, and legally discussed by the counsel as a question of law, which seems wholly unsuitable for the jurisdiction of a justice of the peace. As the damage was occasioned by the throwing of lath-edgings from *Hovey's* lath-mill, and that of *Pope*, *Talbot* and *Seavy* in about equal proportions, and as *Hovey* is dead, damages against the surviving defendants, who are adjudged guilty, and such only can be the basis of judgment in the action.—We therefore order judgment to be entered against *Pope*, *Talbot* and *Seavy* for the sum of $8, 33, and full costs.